UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
YANEIRA NUNEZ,

                           Plaintiff,                        16 Civ. 3917 (PKC)

          -against-                            MEMORANDUM
                                                                   AND ORDER

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                           Defendant.
-----------------------------------------------------------x

CASTEL, Senior District Judge:

        Plaintiff Yaneira Nunez, proceeding pro se, seeks review of the final decision of Carolyn W. Colvin, the Acting Commissioner of Social Security (the "Commissioner") that she is not eligible for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 et seq., or Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1382c et seq., because she is not disabled within the meaning of the Act. Plaintiff contends that the decision of the Administrative Law Judge ("ALJ") was erroneous, not supported by substantial evidence, and contrary to law.

        Defendant has moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff has not responded to the motion. For the reasons set forth below, the motion is granted.

I.   PROCEDURAL HISTORY

        Plaintiff applied for Social Security disability insurance benefits on October 17, 2012, and Supplemental Security Income ("SSI") on October 18, 2012, claiming primarily that a

back disorder prevented her from working. (R. 120, 128, 86-87.)[1] Her claims were denied on January 8, 2013. (R. 138-43.) Plaintiff then requested a hearing. (R. 146.)

The ALJ, Elias Feuer, held a hearing on May 8, 2014, at which plaintiff and her representative appeared. (R. 84.) The ALJ received documentary evidence and heard testimony from Mary Anderson, a vocational expert. (R. 84-85, 115-117.) The ALJ issued his decision on September 16, 2014, concluding that plaintiff was not disabled within the meaning of the Act. (R. 76.)

Plaintiff sought review of the ALJ's decision by the Appeals Council on September 16, 2014, which denied plaintiff's request for review on May 5, 2016. (R. 1.)

On May 25, 2016, plaintiff filed this action, seeking judicial review of the Commissioner's final decision. (Dkt. 1.)

## II. EVIDENCE BEFORE THE ALJ

### a. Plaintiff's Background And Hearing Testimony

Plaintiff was born on March 28, 1979. (R. 208.) Plaintiff is 5'6" tall and weighs approximately 238 pounds, the same as she did in April 2012. (R. 108-09.) She attended college and has an associate's degree. (R. 88, 237.)

In applying for Social Security benefits, plaintiff claimed that she became disabled on approximately April 30, 2012, due to herniated and ruptured discs in her back. (R. 86-87, 236.) Because plaintiff returned to work while her disability claim was pending, plaintiff conceded that she was only disabled for a closed period of time, from April 30, 2012, through September 1, 2013. (R. 86-87.) Prior to developing these conditions, plaintiff worked as a

---

[1] Citations to "(R. __)" refer to the certified copy of the administrative record of proceedings filed by the Commissioner as part of her answer.

cinema ticket salesperson, then as a cashier and salesperson at a clothing store, and then doing data entry work. (R. 90-93.) During part of this time plaintiff also tutored math and reading. (R. 90-92.) As a ticket salesperson, tutor, or working in data entry she would only occasionally be required to climb ramps, stairs, or ladders, balance, stoop, kneel, crouch, or crawl. (R. 116.)

Plaintiff testified that her back pain arose one morning in April 2012 and persisted into the evening when she went to the emergency room. (R. 103.) Plaintiff indicated that she had difficulty getting out of bed and walking. (R. 103.) She received a shot of an unidentified medication at Lincoln Hospital, which did not help with her pain. (R. 103.) She was subsequently prescribed pain medication, including Tylenol, Vicodin, and Percocet. (R. 104, 265.) She attended physical therapy for several months, but stopped attending because her pain worsened. (R. 104-05.) Plaintiff was informed by her primary care physician that surgery was an option, but declined to take this course after being informed that surgery carried a risk that she would never walk again. (R. 105-06.) She saw a pain management doctor who said she "was fine." (R. 106.)

Plaintiff could walk for about an hour (with a break halfway) and sit for about a half hour, but extended walking or sitting caused plaintiff pain. (R. 107.) Plaintiff was able to do "light" housework, but was unable to complete more strenuous tasks. (R. 106-07.) She was unable to mop, sweep, or clean the walls or bathroom. (R. 110.)

Plaintiff, concerned that her obesity was aggravating her back pain, explored medical weight loss options. (R. 109.) Plaintiff's insurance refused to cover bariatric surgery, but plaintiff went forward with abdominoplasty and liposuction procedures. (R. 109-11.) She claims that these procedures succeeded in somewhat alleviating her back pain. (R. 110-11.)

Plaintiff's back felt better starting in April 2013 and she subsequently resumed her tutoring work. (R. 96-99, 106.) In September 2013 she resumed her work as a data entry operator. (R. 88-89, 92-93.) According to earnings records, plaintiff earned $11,137 in 2012 and $11,367.50 in 2013. (R. 223-24, 231-32.)

    b. <u>Medical Records</u>

Plaintiff asserts that she has had a history of herniated and ruptured discs, with associated back pain radiating to her left lower extremity, since she fell while pregnant in 2003. (R. 306.)

On April 17, 2012, plaintiff complained of back pain radiating to her leg and was seen by Dr. Alan Diaz of Salud Medical. (R. 299-300.) Dr. Diaz's examination findings were that plaintiff was well developed and nourished, had periliumbar ternderness, a limited range of motion, with pain, and a normal neurologic examination. (R. 299.) Dr. Diaz diagnosed herniated disc syndrome, noting a medical history of back hernia, and prescribed Medrol, Vicodin, and Flexeril. (R. 299.) A magnetic resonance imaging procedure ("MRI") of plaintiff's lumbosacral spine on April 30, 2012 revealed an L3-L4 left paracentral/subarticular herniation with impingement on the thecal sac, a L4-L5 disc bulge with thecal sac impingement, and a mild left curvature of the spine. (R. 305.)

On May 2, 2012, plaintiff returned to Salud Medical complaining of lower back pain radiating to her left leg and was seen by physician's assistant Edwin Quinones who advised her to stop taking Medrol, continue taking Vicodin, and prescribed Skelaxin and Naprosyn. (R. 297-98.) Mr. Quinones's examination findings were virtually identical to Dr. Diaz's earlier findings. (R. 297.) Plaintiff was also referred to physical therapy. (R. 298.) Plaintiff again met with Mr. Quinones on June 4, 2012, advising that her back pain was now only intermittent. (R.

295-96.) On July 10, 2012, plaintiff again was seen by Dr. Diaz, complaining of continuing back pain. (R. 292.) Examination findings were essentially the same as in the past. (R. 293.) At a subsequent appointment on July 13, 2012, Dr. Diaz prescribed Diflunisal and referred her to a pain management specialist. (R. 290-91.)

On August 17, 2012, plaintiff saw Dr. Realba Rodriguez of Salud Medical for her back pain. (R. 288-89.) Examination findings were the same as prior visits except that Dr. Rodriquez recorded a positive straight leg raise test of the left leg. (R. 288.) Dr. Rodriguez continued plaintiff's medications and ordered another lumbar spine MRI. (R. 289.) The lumbar spine MRI, taken on August 22, 2012, revealed a mild increase in size of the posterior midline to left-sided disc herniation at L3-L4. (R. 303.)

Plaintiff continued to complain of back pain during appointments at Salud Medical in September through October 2012. (R. 278-87.) The only difference with prior examination findings were the additional observations of unspecified weakness and sensory loss. (R. 278-79, 282-84.) In September 2012 Dr. Rodriguez wrote plaintiff a letter for part time after plaintiff indicated she wished to return to work. (R. 287.)

Consultive examiner Jose Corvalan conducted an orthopedic examination of plaintiff at the Division of Disability Determination's request and issued a report on November 29, 2012. (R. 306-08.) The report stated that plaintiff did not use any assistive devices but ambulated with a limp favoring the right side and was not able to sit on her right side. (R. 307.) Plaintiff could squat 30 degrees and needed no help changing for the examination or getting on and off the examination table; she was able to rise from a chair with minimal difficulty and had a normal station. (R. 307.) Plaintiff had limited ranges of motion of the lumbar spine, tenderness to palpitation over the lumbar spine, a positive straight leg raise test bilaterally while sitting, and

5

no spasms or trigger points. (R. 307-08.) Plaintiff had decreased ranges of motion of the hips and knees bilaterally, normal ankle ranges of motion, normal lower extremity strength, no muscle atrophy, no sensory abnormality, normal reflexes, and no joint effusion, inflammation, or instability. (R. 308.) Dr. Corvalan diagnosed low back pain radiating to the left lower extremity, which he noted was stable. (R. 308.) Dr. Corvalan opined that plaintiff had mild to moderate limitations for sitting and standing for long periods of time, walking long distances, bending, squatting, climbing stairs, and lifting heavy objects. (R. 308.)

Plaintiff frequently visited Salud Medical between November 2012 and April 2013, but plaintiff received no treatment for back pain. (R. 344-51.) Instead, plaintiff received treatment for hypothyroidism. (R. 344-51.)

On March 19, 2013, plaintiff saw Dr. Rodriguez for a pre-surgical examination before her abdominoplasty and liposuction procedures. (R. 343.) At both this visit, and a post-surgical follow up visit on April 18, 2013, Dr. Rodriguez noted that plaintiff would continue her medications for her back pain. (R. 340-43.) There was then a nearly five-month gap in plaintiff's treatment at Sulud Medical until plaintiff returned to see Dr. Rodriguez on September 5, 2013 to follow up on laboratory test results unrelated to her back complaints. (R. 337-39.)

Plaintiff continued to be seen at Salud Medical after the time period relevant to her claim (Aril 30, 2012 through September 1, 2013). (R. 317-36.) From December 2013 through January 2014 plaintiff was treated for abdominal pain and received the results of various laboratory and diagnostic testing unrelated to her back. (R. 326-36.) In March 2014 plaintiff received treatment from Dr. Rodriguez for hypothyroidism, herniated disc syndrome, as well as various other maladies, and was prescribed a Fentanyl patch for her back. (R. 319-25.) The examination results during visits from December 2013 through March 2014 are substantially

6

similar to those from previous visits. (R. 323, 326-27, 330, 333, 341-47.) The Fentanyl patch was discontinued in April 2014 after plaintiff reported dizziness and difficulty breathing during an appointment with Siobhain McHale, a nurse practitioner at Salud Medical. (R. 317-18.)

A July 29, 2015 lumbar spine MRI showed L2-L3 and L3-L4 disc herniation; L3-L4 and L4-L5 disc bulges, with annular tears at L4-L5 and foraminal stenosis; no evidence of central canal stenosis; and degenerative disc disease at L2-L3. (R. 8.)

Plaintiff had bariatric surgery on April 22, 2015; a musculoskeletal examination before the surgery was normal and noted that plaintiff had a full range of motion. (R. 26, 29, 36-38.)

### c. Vocational Expert Testimony

Vocational Expert Mary Anderson testified at the administrative hearing. (R. 93-94, 115-17.) The ALJ asked Ms. Anderson to consider a hypothetical person who could perform work at the light exertional level, but had the following limitations: only occasional climbing of ladders, ramps, and stairs, balancing, stooping, kneeling, crouching, and crawling. (R. 115-16.) Ms. Anderson testified that such a person could perform plaintiff's past work as a tutor, data entry operator, and ticket seller. (R. 116.) Ms. Anderson also identified other positions in the national economy that such a person could perform. (R. 116.) These included cashier (3,314,010 jobs existing nationally), motor information clerk (966,115 jobs existing nationally), and storage facility rental clerk (432,650 jobs existing nationally). (R. 116.)

## III. APPLICABLE LAW

### a. Standard Of Review

Under Rule 12(c), Fed. R. Civ. P., a movant is entitled to judgment on the pleadings only if she establishes "that no material issue of fact remains to be resolved and that

7

[she] is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

Review of the Commissioner's final decision denying disability benefits is limited. A court may not review the Commissioner's decision de novo. See Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam). If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied . . . the court shall review only the question of conformity with [the] regulations . . . ."); see Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). Therefore, a court's review involves two levels of inquiry. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). First, the court must review "whether the Commissioner applied the correct legal standard," id., including adherence to applicable regulations, see Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). Second, the court must decide whether the Commissioner's decision is supported by substantial evidence. Tejada, 167 F.3d at 773.

"Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "The substantial evidence test applies to inferences and conclusions drawn from basic evidentiary facts as well as the facts themselves." Murphy v. Sec'y of Health & Human Servs., 62 F. Supp. 2d 1104, 1106 (S.D.N.Y. 1999). "Where the Commissioner's decision rests on

adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). The reviewing court views the evidence as a whole, not in isolation, see Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990), and the fact that there is substantial evidence contrary to the Commissioner's decision does not require that it be disturbed so long as substantial evidence also supports it, see DeChirico v. Callahan, 134 F.3d 1177, 1182-83 (2d Cir. 1998).

It is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." Veino, 312 F.3d at 588.

Finally, "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record," regardless of whether the claimant is represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). The Court must be satisfied that the claimant received a full hearing, consistent with the purposes of the Act. See Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982).

  b. Five-Step Disability Determination

The Act defines "disability" in relevant part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A). The Act provides that "[a]n individual shall be determined to be under

9

a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); see also 42 U.S.C. § 1382c(a)(3)(B). "Work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); see also 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner's determination of a claimant's disability follows a five-step sequential analysis promulgated by the Social Security Administration (the "SSA"). 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has described this analysis as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (citation omitted; brackets and omission in original). The claimant bears the burden of proof for the first four steps; the burden shifts to the

Commissioner at the fifth step. See Shaw, 221 F.3d at 132.

"In making his determination by this process, the Commissioner must consider four factors: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Brown, 174 F.3d at 62 (internal quotation marks omitted). Further, the Commissioner "shall consider the combined effect of all the individual's impairments." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

    c.   The Treating-Physician Rule

The opinion of a claimant's treating physician regarding "the nature and severity of [claimant's] impairment(s)" will be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). "[T]he lack of specific clinical findings in the treating physician's report [does] not, standing by itself, justify the ALJ's failure to credit the physician's opinion." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. See id.

If not afforded controlling weight, a treating physician's opinion is given weight according to a number of factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see Clark, 143 F.3d at 118.

11

A chiropractor's opinion is not a medical opinion and is therefore not covered by the treating-physician rule. See Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir. 1995). "[T]he ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him . . . ." Id. at 314.

Finally, the opinion of a treating physician, or any doctor, that the claimant is "disabled" or "unable to work" is not controlling. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

    d. Subjective Claims Of Pain

The subjective experience of pain can constitute a disability if it derives from a physical or mental impairment and is so severe "as to preclude any substantial gainful employment." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983); see Gallagher on Behalf of Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983); 20 C.F.R. §§ 404.1529, 416.929. Subjective complaints alone, however, are not "conclusive evidence" that a person is disabled, 42 U.S.C. § 423(d)(5)(A), and the ALJ may evaluate the credibility of a plaintiff who claims to experience pain, see Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).

IV. DISCUSSION

As explained below, the ALJ properly applied the five-step sequential analysis to determine that plaintiff was not disabled during the time period April 30, 2012 through September 1, 2013. That decision was supported by substantial evidence in the record. Thus, the Court affirms the Commissioner's final decision.

At the first step, the ALJ determined that plaintiff had engaged in substantial gainful activity since the alleged onset date of her disability, April 30, 2012. (R. 70-71.) This was consistent with the evidence in the record, which indicated insubstantial fluctuations in tutoring income between years in which she was working and years in which she claimed she

was not working for large portions of the year due to her disability, (R. 223-24, 231-32), as well as plaintiff's hearing testimony that she resumed tutoring prior to the requested close date of her claim. (R. 96-99, 106.) However, the ALJ went on to address the other factors, finding that there may have been a continuous 12-month period during which plaintiff did not engage in substantial gainful activity. (R. 71.)

Second, the ALJ considered whether plaintiff had a "severe" impairment, finding that she did; plaintiff suffered from "herniated disc syndrome of the lumbar spine and obesity." (R. 71.) The ALJ found that plaintiff had "nonsevere hypothyroidism," finding that plaintiff had "not complained of symptoms related to hypothyroidism" and that "hypothyroidism no more than minimally affects her abilities to perform basic work activities." (R. 71.)

Third, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 71.) The ALJ found that even having "given particular consideration to the claimant's physical impairments," the "medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (R. 71.)

Fourth, the ALJ considered whether, despite plaintiff's severe impairments, she had the residual functional capacity to perform her past work. (R. 71.) The ALJ found that while "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 72.) The ALJ found that "claimant's treatment notes reflect relatively minimal physical examination findings by her

13

treating primary care physicians and fairly conservative treatment . . . for her reported symptoms." (R. 72.) The ALJ credited the November 2012 examination report by Dr. Corvalan, which found plaintiff able to rise from a chair with minimal difficulty, to have normal station, to require no help changing for the examination or getting on and off the examination table, and to show no back spasm, muscle atrophy, or sensory abnormality. (R. 72.) The ALJ accorded "great weight" to the opinion of Dr. Corvalan, "who opined that the claimant had mild to moderate limitation for sitting and standing for long periods, walking long distances, bending, squatting, climbing stairs, or lifting any heavy objects." (R. 74.) The ALJ noted that this opinion was "consistent with the examination notes and with the treating physicians' progress notes." (74.)

Fifth, and finally, the ALJ considered whether there was other work that plaintiff could perform. (R. 74.) The ALJ credited Ms. Anderson's testimony that the residual functional capacity outlined by medical evidence would enable plaintiff to undertake past relevant work, including work as a salesperson, data entry clerk, and tutor, and found that plaintiff was able to perform such work as it is actually and generally performed. (R. 74.) Alternatively, the ALJ found that plaintiff was able to undertake several jobs existing in significant numbers in the national economy, including cashier, motor information clerk, and storage-facility rental clerk. (R. 75.) Ms. Anderson testified that an individual requiring a sit/stand option with sitting for no more that thirty minutes and standing for as long as needed would not be precluded from engaging in such occupations. (R. 75.) The ALJ found that, based on claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 76.)

Thus, using the correct five-step analysis, and based on substantial evidence in the record, the ALJ found that plaintiff had not been under a disability, as defined in the Act, during the relevant time period. (R. 76.)

CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings (Dk. No. 10) is GRANTED. The Clerk is directed to close the case.

This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

                                               P. Kevin Castel
                                    United States District Judge

Dated: New York, New York
        August 22, 2017